**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| In Re: <br>     Douglas A. Turner and <br>     Mary E. Turner, <br>         Debtors. | Chapter 7 <br> Case # 09-11281 | |
| In Re: <br>     Kimberly L. Murray, <br>         Debtor. | Chapter 7 <br> Case # 09-11365 | Filed & Entered <br> On Docket <br> February 3, 2011 |
| In Re: <br>     Paul J. Bova, Jr., and <br>     Lisa M. Bova, <br>         Debtors. | Chapter 7 <br> Case # 09-11420 | |
| In Re: <br>     Chad E. Coon and <br>     Racheal Bjornson-Coon, <br>         Debtors. | Chapter 7 <br> Case # 09-11466 | |

*Appearances:*

| | |
|---|---|
| *Douglas J. Wolinsky* <br> Primmer Piper Eggleston & Cramer PC <br> Burlington, VT <br> Chapter 7 Trustee | *Todd Taylor* <br> Burlington, VT <br> For Douglas A. Turner & Mary E. Turner and <br> For Chad E. Coon & Racheal Bjornson-Coon |
| *Nancy M. Geise*, Kolvoord Overton & Wilson <br> Essex Junction, VT <br> For Kimberly L. Murray | *John P. Riley* <br> Montpelier, VT <br> For Paul J. Bova, Jr. & Lisa M. Bova |

**MEMORANDUM OF DECISION
OVERRULING THE TRUSTEE'S OBJECTIONS TO EXEMPTION,
GRANTING IN PART AND DENYING IN PART THE TRUSTEE'S MOTIONS FOR TURNOVER,
AND SCHEDULING ORAL ARGUMENT ON NOTICE ISSUE**

      In the four above-named cases, the Chapter 7 Trustee objects to the Debtors' claimed exemptions of their 2009 tax refunds and seeks turnover. The five legal issues before the Court are: 1) whether the pro rata portions of tax refunds allocable to the Debtors' earnings during the period of the tax year prior to the Debtors' filing of a bankruptcy petition (the "Pro Rata Refunds") are property of the respective bankruptcy estates; 2) whether each of the Debtors' exemptions of their Pro Rata Refunds were timely and proper even if the Debtors did not claim the exemptions until after the Trustee demanded turnover of their tax refunds; 3) whether the Trustee is entitled to turnover of the Pro Rata Refunds; 4) whether

1

the Trustee is entitled to compensation for his efforts to obtain the Pro Rata Refunds; and 5) whether the Debtors were entitled to notice prior to the Trustee's interception of their tax refunds.

For the reasons set forth below, the Court finds that the Pro Rata Refunds are property of the bankruptcy estate, that the Debtors' amendments of Schedule C after the Trustee's turnover demand were timely and proper, that the Trustee is entitled to turnover to the extent that the amount of the Pro Rata Refunds exceed the amount of the claimed exemptions, and that the Trustee is not entitled to additional compensation. Accordingly, the Court overrules the Trustee's objections to the Debtors' exemptions and grants in part and denies in part the Trustee's motions for turnover. With respect to the notice issue, the Court finds the record insufficient to rule at this time and defers decision on that issue until after the parties supplement the record.

## JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334 and declares them to be core proceedings under to 28 U.S.C. § 157(B)(2)(B) and (E).

## PROCEDURAL HISTORY

In each of these cases, the Chapter 7 Trustee filed a motion objecting to the Debtors' exemption of the pre-petition portion of their 2009 tax refunds on amended Schedule C,[1] and requesting turnover pursuant to 11 U.S.C. § 542.[2] The Debtors each filed a response to the Trustee's objection.[3]

The Court held a preliminary hearing on this matter on May 18, 2010, and on July 12, 2010, the Court entered an Order setting forth a schedule for the parties to file memoranda of law and a joint stipulation of facts in these cases, upon which the Court would decide the matter without further hearing.[4]

The parties filed joint stipulations of facts in two of the above-named cases.[5] The Trustee filed memoranda of law in support of his objection to exemption in all of these cases,[6] and each of the

---

[1] See # 09-11281, doc. # 16; # 09-11365, doc. # 18; # 09-11420, doc. # 20; # 09-11466, doc. # 14.

[2] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

[3] See # 09-11281, doc. # 17; # 09-11365, doc. # 24; # 09-11420, doc. # 23; # 09-11466, doc. # 15.

[4] See # 09-11281, doc. # 23; # 09-11365, doc. # 33; # 09-11420, doc. # 28; # 09-11466, doc. # 21. Thereafter, on September 1, 2010, the Court enter an Order granting the parties' stipulated motion to extend the time for the Debtors to file responding memoranda. See # 09-11281, doc. # 28; # 09-11365, doc. # 38; # 09-11420, doc. # 35; # 09-11466, doc. # 26.

[5] See # 09-11365, doc. # 35; # 09-11420, doc. # 30. The Trustee filed stipulations of fact in the other two cases (# 09-11281, doc. # 25; # 09-11466, doc. # 23), but the Debtors did not sign the stipulations or file their consents thereto.

[6] See # 09-11281, doc. # 26; # 09-11365, doc. # 36; # 09-11420, doc. # 33; 09-11466, doc. # 24.

2

Debtors filed responsive memoranda of law.[7] The Trustee filed reply memoranda,[8] and the Debtors filed sur-replies in two of the cases.[9] The contested matters are now fully submitted.

### FINDINGS OF FACT

Based upon the parties' papers and the record in these cases, the Court makes the following findings of fact:

#### 1. *The Turner Case (# 09-11281):*

(a) On October 28, 2009, Debtors Douglas and Mary Turner filed a voluntary Chapter 7 petition and schedules that did not disclose a right to receive a 2009 tax refund (# 09-11281, doc. # 1).

(b) Mr. and Mrs. Turner provided the Trustee with a copy of their 2008 federal income tax return at or prior to their meeting of creditors on January 6, 2010 (# 09-11281, doc. # 25, ¶ 6).

(c) The meeting of creditors was closed on January 7, 2010.

(d) Mr. and Mrs. Turner's 2008 tax returns reflected a right to a federal income tax refund for the calendar year preceding the year in which they filed their petition (# 09-11281, doc. # 25).

(e) Based upon the 2008 federal tax refund, on December 14, 2009, the Trustee sent a letter to the Internal Revenue Service requesting that Mr. and Mrs. Turner's 2009 tax refunds, if any, be sent to him (# 09-11281, doc. # 25, ¶ 9).

(f) The Trustee had not yet received a check from the United States Treasury reflecting any portion of Mr. and Mrs. Turner's 2009 tax refund as of April 15, 2010 (# 09-11281, doc. # 16, ¶ 10). It is unclear whether the Trustee ever received it.

(g) On March 17, 2010, Mr. and Mrs. Turner filed an amended Schedule C disclosing previously undisclosed 2009 tax refunds of $6,476.00 (federal) and $1,242.00 (state), totaling $7,718.00, and claiming them as exempt pursuant to 11 U.S.C. § 522(d)(1) (# 09-11281, doc. # 15).

(h) On April 15, 2010, the Trustee timely objected to Mr. and Mrs. Turner's claim of an exemption in the Pro Rata Refunds (# 09-11281, doc. ## 15, 16).

#### 2. *The Murray Case (# 09-11365):*

(a) On November 17, 2009, Debtor Kimberly Murray filed a voluntary Chapter 7 petition and schedules that did not disclose a right to receive a 2009 tax refund (# 09-11365, doc. # 35).

(b) Ms. Murray provided the Trustee with a copy of her 2008 federal income tax return at or prior to her meeting of creditors on January 6, 2010 (# 09-11365, doc. # 35, ¶ 6).

(c) The meeting of creditors was closed on January 7, 2010.

(d) Ms. Murray's 2008 tax returns indicated that she was entitled to a federal income tax refund for the calendar year preceding the year in which she filed her petition (# 09-11365, doc. # 35, ¶ 8).

(e) Based upon the 2008 federal income tax refund, on January 15, 2010, the Trustee sent a letter to the Internal Revenue Service requesting that Ms. Murray's 2009 tax refunds, if any, be sent to him (# 09-11365, doc. # 35, ¶ 9).

---

[7] See # 09-11281, doc. # 29; # 09-11365, doc. # 40; # 09-11420, doc. # 37; # 09-11466, doc. # 27.

[8] See # 09-11281, doc. # 31; # 09-11365, doc. # 41; # 09-11420, doc. # 38; # 09-11466, doc. # 29.

[9] See # 09-11281, doc. # 32; # 09-11466, doc. # 30.

(f)     The Trustee subsequently received a check from the United States Treasury in the amount of $3,866.00, identified as Ms. Murray's 2009 federal tax refund (# 09-11365, doc. # 35, ¶ 10).

(g)     On March 11, 2010, Ms. Murray filed an amended Schedule C disclosing previously undisclosed 2009 federal and state tax refunds totaling $4,997.00, and claiming them as exempt pursuant to 12 V.S.A. § 2740(7) (# 09-11365, doc. ## 14, 35, ¶¶ 11, 12).

(h)     On April 9, 2010, the Trustee timely objected to Ms. Murray's claim of an exemption in the Pro Rata Refunds (# 09-11365, doc. ## 14, 18).

### 3. *The Bova Case* (# 09-11420):

(a)     On December 1, 2009, Debtors Paul and Lisa Bova filed a voluntary Chapter 7 petition and schedules; the schedules did not disclose a right to receive a 2009 tax refund (# 09-11420, doc. # 1). Mr. and Ms. Bova's statement of financial affairs disclosed that Mr. Bova had transferred $2,000.00 to an attorney as a retainer for legal services associated with a separation from Ms. Bova and the possibility that the parties might file for divorce; it also showed different places of residence for Mr. and Ms. Bova (# 09-11420, doc. # 30, ¶ 9).

(b)     Mr. and Ms. Bova provided the Trustee with a copy of their 2007 and 2008 federal and state income tax returns prior to the meeting of creditors on January 6, 2010 (# 09-11420, doc. # 30).

(c)     The meeting of creditors was closed on January 7, 2010.

(d)     Mr. and Ms. Bova's 2008 tax returns indicated that they were entitled to a federal income tax refund for the calendar year preceding the year in which they filed their petition (# 09-11420, doc. # 30, ¶ 11).

(e)     Based upon the 2008 federal tax refund, on January 15, 2010, the Trustee sent a letter to the Internal Revenue Service requesting that Mr. and Ms. Bova's 2009 tax refunds, if any, be sent to him. The Trustee did not give notice of this request to Mr. and Ms. Bova or their counsel; Mr. Bova only learned of the Trustee's request upon inquiry to the Department of the Treasury (# 09-11420, doc. # 30, ¶¶ 12, 15).

(f)     On February 16, 2010, Mr. and Ms. Bova filed a joint federal tax return for 2009, reflecting a right to a federal tax refund in the amount of $2,073.00. The Trustee subsequently received a check from the United States Treasury in the amount of $2,073.00, identified as Mr. and Ms. Bova's refund (# 09-11420, doc. # 30, ¶¶ 13–14).

(g)     On March 22, 2010, Mr. and Ms. Bova filed an amended Schedule C disclosing previously undisclosed 2009 tax refunds of $2,073.00 (federal) and $180.00 (state), totaling $2,253.00, and claiming them as exempt pursuant to 12 V.S.A. § 2740(7) (# 09-11420, doc. ## 19, 30).

(h)     On April 15, 2010, the Trustee timely objected to Mr. and Ms. Bova's claim of an exemption of the Pro Rata Refunds (# 09-11420, doc. ## 19, 20, 30, ¶ 18).

### 4. *The Coon and Bjornson-Coon Case* (# 09-11446):

(a)     On December 14, 2009, Debtors Chad Coon and Racheal Bjornson-Coon filed a voluntary Chapter 7 petition that did not disclose a right to receive a 2009 tax refund (# 09-11466, doc. ## 1, 23, ¶ 13).

(b)     Mr. Coon and Ms. Bjornson-Coon provided the Trustee with a copy of their 2008 federal income tax return at or prior to their meeting of creditors on January 6, 2010 (# 09-11446, doc. # 23).

(c)     The meeting of creditors was closed on January 7, 2010.

(d)     Mr. Coon and Ms. Bjornson-Coon's 2008 tax returns indicated that they were entitled to a federal income tax refund for the calendar year preceding the year in which they filed their

petition (# 09-11466, doc. # 23, ¶ 8).

(e) Based upon the 2008 federal tax refund, on January 13, 2010, the Trustee sent a letter to the Internal Revenue Service requesting that Mr. Coon and Ms. Bjornson-Coon's 2009 tax refunds, if any, be sent to him (# 09-11466, doc. # 23, ¶ 8).[10]

(f) The Trustee had not yet received a check from the United States Treasury reflecting the exempt amount of Mr. Coon and Ms. Bjornson-Coon's 2009 tax refund as of July 16, 2010 (# 09-11446, doc. # 23, ¶ 10). It is unclear whether the Trustee ever received it.

(g) On March 12, 2010, Mr. Coon and Ms. Bjornson-Coon filed an amended Schedule C disclosing previously undisclosed 2009 tax refunds of $5,640.00 (federal) and $830.00 (state), totaling $6,470.00, and claiming them exempt pursuant to 12 V.S.A. § 2740(7) (# 09-11466, doc. # 12).

(h) On April 9, 2010, the Trustee timely objected to Mr. Coon and Ms. Bjornson-Coon's claim of an exemption of the Pro Rata Refunds (# 09-11466, doc. ## 12, 14).

### DISCUSSION

#### 1. *Are the Pro Rata Refunds Property of the Estate?*

The Trustee argues that the bankruptcy estate includes the pro rata portion of the Debtors' 2009 tax refunds allocable to the Debtors' earnings during the period of the 2009 tax year prior to the petition filing date. The Trustee seeks turnover of the Debtors' 2009 Pro Rata Refunds under § 542, on the basis that these Pro Rata Refunds are property of the bankruptcy estate and the Debtors have not properly claimed them as exempt. The Court addresses first the threshold question of whether the Pro Rata Refunds are property of the estate. Section 541 defines "property of the estate" in a bankruptcy case very broadly, and provides, in relevant part, that:

(a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) . . . [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

The Bankruptcy Court for the Northern District of New York addressed the question of whether tax refunds "earned" pre-petition are part of a debtor's bankruptcy estate and held that they are, based upon the following rationale:

> The case law is clear that property of the estate encompasses a debtor's interest in any income tax refund based on pre-petition income and withholding. In re Edwards, 363 B.R. 55, 57 (Bankr. D. Conn. 2007) (citing Kokoszka v. Belford, 417 U.S. 642, 647–43, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); see In re Law, 336 B.R. 780 (B.A.P. 8th Cir. 2006) (federal and state income tax refunds that chapter 7 debtors received post petition were included in "property of the estate," as contingent interests in future payments which debtors possessed when they filed bankruptcy); see also Araj v. Kohut (In re Araj), 371 B.R. 240, 243–44 (E.D. Mich. 2007) (noting that "every court that has considered

---

[10] The Court notes that, although ¶ 8 states that the Trustee requested "that the Debtors' 2009 tax refunds be forwarded to **them**" (emphasis added), it is clear from the context that this is a typographical error.

this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." (citations omitted)). This would include a pro rata portion of a debtor's income tax refund if the debtor's petition was filed during, but prior to the close of, the relevant tax year. In re Barowsky, 946 F.2d 1516 (10th Cir. 1991); see In re Nye, 250 B.R. 46 (Bankr. W.D.N.Y. 2000). The court concurs with the reasoning of these cases and holds that the Trustee is entitled to that portion of the Debtor's tax refund attributable to withholding of pre-petition income.[7] As the Trustee indicated, this portion can easily be computed by multiplying the amount of the refund by a fraction whose numerator is the day of the tax year on which the bankruptcy petition was filed and whose denominator is 365.

> [7] Pursuant to New York Debtor & Creditor Law § 282, New York has opted out of the federal exemptions set forth in § 522 of the Bankruptcy Code. New York Debtor & Creditor Law § 283(2) allows a New York debtor a cash exemption of $ 2,500, and the statute specifically defines cash to include income tax refunds. Thus, in many instances, a debtor's tax refund will be exempt up to $ 2,500. Here, however, the Debtor has claimed his cash exemption for [funds other than the tax refund].

In re Parker, 2008 Bankr. LEXIS 1046, *18–20, n.7, 2008 WL 906570, *6, n.7 (Bankr. N.D.N.Y. Apr. 3, 2008). This Court agrees with the reasoning of its sister court and finds that the pro rata portion of a tax refund based on earnings of a debtor during the period of a tax year prior to the bankruptcy filing date is property of the bankruptcy estate.

However, the instant cases are distinguishable from Parker in a crucial respect. Whereas in Parker, the debtor did not have an exemption available to shield the tax refund from administration by the trustee, each of the debtors in the instant Chapter 7 cases has claimed the tax refund at issue as exempt on his or her amended Schedule C. Therefore, the Court addresses next the validity of those exemptions.

### 2. *Were the Debtors' Claims of Exemption Timely and Proper?*

The Trustee argues that that the Debtors' exemptions of the tax refunds on amended Schedule C should be disallowed in the instant cases because the Debtors negligently or intentionally failed to disclose the tax refunds on their original petitions (# 09-11281, doc. # 16; # 09-11365, doc. # 18; # 09-11420, doc. # 20; # 09-11466, doc. # 14). This argument fails.

Under the Federal Rules of Bankruptcy Procedure, "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Courts have no discretion to reject amendments unless a debtor has acted in bad faith or concealed property, or the amendment would prejudice creditors. See Suggitt v. French (In re French), 2003 Bankr. LEXIS 908, *8, 2003 WL 21288644, *2 (Bankr. D. Vt. May 30, 2003) ("a debtor has an absolute right to amend his or her schedules") (citing In re Blaise, 116 B.R. 398, 400 (Bankr. D. Vt. 1990) ("by its terms Rule 1009 liberally entitles a debtor to amend at any time before the case is closed")); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132 (2d Cir. 1994) (affirming decision emphasizing that Rule 1009(a) right to amend

6

can only be exercised when there is no issue of bad faith or prejudicial reliance).

The burden of proof is on the objecting party to demonstrate that a debtor is not entitled to the claimed exemption or that the statute cited in support of the exemption does not authorize the exemption claimed. See Fed. R. Bankr. P. 4003(c) ("the objecting party has the burden of proving that the exemptions are not properly claimed"); see also Obuchowski et al. v. Mick (In re Mick) (AP # 02-1047, doc. # 34, pp. 13–15) (Bankr. D. Vt. Sept. 24, 2003). If the objecting party fails to produce evidence in support of the objection, any factual issue must be resolved in favor of the debtor. See Collier on Bankruptcy ¶ 4003.04 (citing Gagne v. Bergquist, 179 B.R. 884 (D. Minn. 1994)).

In his objection to exemption (# 09-11281, doc. # 16; # 09-11365, doc. # 18; # 09-11420, doc. # 20; # 09-11466, doc. # 14), the Trustee argues that the Debtors should be denied their right to amend Schedule C because: 1) the Debtors each had the prior year's tax return evidencing a refund and, absent a change in circumstances, could have projected that they would be entitled to a tax refund for the calendar year in which the bankruptcy case was filed; 2) the Debtors each certified the truthfulness and accuracy of their bankruptcy petition by their signature, and in fact the schedules were not true and accurate; 3) the Debtors each certified that they had reviewed the bankruptcy petition, schedules, and statements of financial affairs, and answered those questions truthfully and accurately at the meeting of creditors, and this certification was inaccurate; 4) the tax refunds were not insignificant; and 5) but for the Trustee's inquiry, the Debtors would likely never have disclosed the tax refunds (Id. at pp. 2–3). The Trustee further argues that he has been prejudiced by having to expend time and effort to administer the tax refunds. (Id. at p. 3).

The Debtors each deny that they "concealed" their 2009 tax refunds. Debtors Douglas and Mary Turner assert that since they filed their case in October of 2009, their tax return was not yet due, they did not know if they were entitled to a tax refund for the 2009 tax year, and once they learned of the Trustee's claim to their refund, they promptly reported this to their attorney and their attorney filed amended schedules disclosing and exempting the refund (# 09-11281, doc. # 17). Likewise, Debtor Kimberly Murray asserts that she did not complete her 2009 tax return until nearly four months after she filed her bankruptcy case, and that her failure to disclose an estimated amount of her tax refund potentially due her for the 2009 tax year was an oversight (# 09-11365, doc. # 24, ¶¶ 1, 4). She explains that when she wrote on the bankruptcy questionnaire she gave her attorney that she was not owed tax refunds she thought the question was inquiring about additional refunds for the prior tax year, the last period for which a return was filed (Id. at ¶ 4). Ms. Murray insists that she filed her amended schedules as soon as she ascertained she was entitled to a 2009 tax refund – not in response to any independent discovery by the Trustee (Id. at ¶ 6). Debtors Paul and Lisa Bova argue that when they filed their

7

petition in early December 2009 they did not know whether they would receive any tax refund for 2009, and the answer to the question was particularly speculative for them because their legal status was significantly different than prior years in that they were separated, living apart, and expecting to divorce (# 09-11420, doc. # 23, p. 2). They assert that as of the January 6, 2010 creditors meeting, they had not filed their 2009 tax return and had no idea of whether they would be eligible for a refund (Id. at 1), and as soon as they became aware of the Trustee's demand on the Department of Treasury, they amended their schedules to list the refunds as an asset and to claim them as exempt (Id. at 2). Debtors Chad Coon and Racheal Bjornson-Coon similarly argue that they did not know on the date they filed their case whether they would receive a 2009 tax refund and, as soon as they found out there was a refund due to them, they promptly reported this to their attorney and their attorney filed amended schedules disclosing and exempting the refund (# 09-11466, doc. # 15).

The Trustee has not produced any evidence or argument that undermines the veracity of the Debtors' explanations for their failure to list the Pro Rata Refunds on their original schedules. The Court finds the Debtors' respective positions to be credible and reasonable.

Based upon the record in these cases, the Court finds that the Trustee has not presented sufficient evidence to carry his burden of proof that the Debtors concealed the tax refunds, that the Debtors improperly claimed their Pro Rata Refunds to be exempt, or that allowance of the Debtors' amendments to their exemption schedules would prejudice creditors. See Collier on Bankruptcy ¶ 1009.02[1] ("the appropriate inquiry is not whether a creditor will recover less or be adversely affected by the amendment . . . [i]nstead, a court must determine whether the creditor would be adversely affected by having detrimentally relied on the debtor's initial position").

Additionally, the Court takes into account the following factors: 1) the Trustee has taken a position not previously taken by trustees in this District; 2) it would not have been unreasonable for the Debtors or the counsel to have had no expectation that a trustee would demand turnover of the pre-petition portion of tax refunds received post-petition; and 3) the Debtors promptly amended their schedules to exempt the property once they had notice of the Trustee's position. Applying the law to the foregoing findings and these additional factors, the Court finds that each of the Debtors in the instant Chapter 7 cases timely and properly claimed the Pro Rata Refunds as exempt on their amended Schedule C and, therefore, the Trustee's objection to their exemption in each of these cases is overruled.

### 3. *Is the Trustee Entitled to Turnover of the Pro Rata Refunds?*

Having determined that the Pro Rata Refunds are property of the estate and that the Debtors timely and properly claimed the tax refunds at issue as exempt, the Court turns to the salient question of whether the Trustee is entitled to turnover of any part of the Pro Rata Refunds in these cases. The

answer is straightforward: the Trustee is entitled to any portion of the Debtors' Pro Rata Refunds that is not properly exempt. See In re Parker, 2008 Bankr. LEXIS 1046 at *18–20, 2008 WL 906570 at *6. Accordingly, the Trustee's motion for turnover is granted in each of these cases to the extent that the amount of the Pro Rata Refund exceeds the amount of the claimed exemption, and denied to the extent that the amount of the Pro Rata Refund is equal to or less than the amount of the claimed exemption.

### 4. *Is the Trustee Entitled to Compensation for his Efforts?*

In his objection to exemption (# 09-11281, doc. # 16; # 09-11365, doc. # 18; # 09-11420, doc. # 20; # 09-11466, doc. # 14), the Trustee argues that he should be compensated for his time and effort in the event the Court allows the exemptions (Id. at p. 3).

Under § 326, a trustee is only entitled to compensation as trustee in the form of commissions based upon assets liquidated. Efforts to seek assets do not alter the computation of commissions or authorize an increase to the compensation calculated under the formula set forth in § 326.[11] The Trustee's motions were well founded and well argued. He is to be commended for diligently pursuing assets. However, those efforts do not warrant an award of trustee compensation in excess of the sums authorized under § 326. Therefore, the Court denies the Trustee's request, without prejudice to the Trustee's right to file an application for payment of an administrative expense in these cases.

### 5. *Were the Debtors Entitled to Notice of the Trustee's Interception of Tax Refunds?*

The Debtors in each case allege that the Trustee failed to provide them with notice of his letter to the Internal Revenue Service requesting that it send the Debtors' tax refunds to him.[12] Essentially, the Debtors argue that the Trustee violated their due process rights when he sent letters of intercept to the Internal Revenue Service requesting turnover of tax refunds without prior or simultaneous notice to them and their counsel. This is an issue of first impression in this District. The parties have not cited, and the Court has not found, any case that addresses this specific notice issue. Accordingly, the Court shall schedule oral argument on this issue and grant the Debtors and the Trustee (and other interested parties) an opportunity to file memoranda of law on whether, and the extent to which, a trustee must give notice to a debtor before seeking turnover of an asset the trustee perceives to be property of the estate, and whether Bankruptcy Rule 6007 applies to this sort of disposition of estate property by a case

---

[11] See In re Shaw, 330 B.R. 113, 116 (Bankr. D. Vt. 2005) (noting that court has discretion to allow trustee a commission up to the amount set forth in § 326(a)); see also In re Roco Corp., 64 B.R. 499, 502 (D. R.I. 1986) ( stating that § 326(a) caps the compensation that may be awarded to trustees for services in that capacity).

[12] In the Bova case, the Debtors and the Trustee have stipulated that the Trustee did not give notice of his request for the tax refunds to either Mr. and Ms. Bova or their counsel (see Findings of Fact ¶ 3(e), supra). While there is no stipulation that the Trustee did not give notice of his request to the Debtors in the other three cases, the Debtors in those cases have each requested that the Court declare that the Trustee violated their due process rights and had a duty to provide them with notice of his request for turnover of the tax refunds (see # 09-11281, doc. # 29; # 09-11365, doc. # 40; # 09-11466, doc. # 27).

trustee.

## CONCLUSION

For the reasons set forth above, the Court reaches the following conclusions of law. First, the pro rata portion of a tax refund based on earnings of a debtor during the period of a tax year prior to the bankruptcy filing date is property of the bankruptcy estate. Second, the Debtors' amendments of Schedule C after the Trustee's turnover demand were timely and proper. Third, the Trustee is entitled to turnover in each of these cases only to the extent that the amount of the Pro Rata Refunds exceeds the amount of the allowed claimed exemption. Fourth, the Trustee is not entitled to compensation in excess of that determined under the formula set forth in § 326, for the time and efforts he expended challenging the Debtors' exemptions. Finally, with respect to the issue of whether the Trustee had a duty to give the Debtors notice of his interception of their tax refunds, the Court finds the record to be insufficient to rule at this time and defers decision on this issue until after the parties supplement the record.

Accordingly, in each of these cases the Court overrules the Trustee's objection to the claimed exemption of the Pro Rata Refund, grants in part and denies in part the Trustee's motion for turnover, denies the Trustee's request for additional § 326 compensation, and shall enter an order setting a schedule for further argument on the notice issue.

The Court has considered all of the arguments of the parties, and to the extent any argument is not specifically addressed in this memorandum it is because the Court has found it to be without merit.

This memorandum of law constitutes the Court's findings of fact and conclusions of law.

February 3, 2011  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

10